UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 24-CR-00303-NCM
                                   :
                                   :
                                   : United States Courthouse
          -against-                : Brooklyn, New York
                                   :
                                   :
                                   : Thursday, May 8, 2025
                                   : 3:00 p.m.
KARL CRONIN,                       :
                                   :
          Defendant.               :
                                   :
- - - - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE NATASHA C. MERLE
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:     United States Attorney
                        Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                    BY:  NICHOLAS MOSCOW, ESQ.
                          Assistant United States Attorney

For the Defendant:     GARY FARRELL, ESQ.
                          40 Exchange Place, Suite 1800
                          New York, New York 10005

Court Reporter:  Nicole J. Sesta, RMR, CRR, RPR
                 Official Court Reporter
                 E-mail:  NSestaRMR@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

THE COURTROOM DEPUTY:  Criminal cause for a status conference, United States of America versus Karl Cronin, Docket No. 24-CR-303.  Would you all please state your appearances for the record, starting with the government.

MR. MOSCOW:  Good afternoon, Your Honor.  Nick Moscow for the United States.

THE COURT:  Good afternoon.

MR. CHABROWE:  Good afternoon.  Jeff Chabrowe for Mr. Cronin.

THE COURT:  Good afternoon.  Good afternoon, Mr. Cronin.

MR. FARRELL:  Your Honor, Gary Farrell, appointed as Curcio counsel for Mr. Cronin.  Good afternoon.

THE COURT:  Good afternoon.  So we're here for a status conference today to discuss a number of developments, including, as I previewed in my May 6th order, three days ago I received a letter from Mr. Cronin concerning whether he would like to proceed with his counsel in this case, Mr. Chabrowe, or whether he wants another attorney or to represent himself.

Before we turn to that, though, I wanted to go through some administrative items.  There has been a number of requests to seal certain documents.  There has been a lot of back and forth and different documents that there's been requests to seal or redact.  I just wanted to get that all

straightened out, and then we'll go through counsel, Mr. Cronin's request, and whether we need a Curcio hearing or what we need next. I'm going to begin with the sealing portion of the outstanding items.

So I've reviewed the parties' respective positions on sealing of the MDC's letter pertaining to Mr. Chabrowe's alleged misconduct. I'll start with Mr. Chabrowe. As part of the reason you believe MDC's letter should be maintained under seal, you contend that the letter contains or references potential privileged information, and that your response references meetings with the government.

I did not see that. And so I wanted to see if you could explain more what you're referring to in terms of potentially privileged information that's disclosed and referencing meetings you've had with the government.

MR. CHABROWE: Your Honor --

THE COURT: I believe that's ECF 22 is MDC's letter, and I'm referring to your response, which is ECF 29-1.

MR. CHABROWE: I think, Your Honor, that my response references meetings with the government and proffered meetings that Mr. Cronin had. So I want that to be sealed.

THE COURT: You think that's in MDC's letter?

MR. CHABROWE: No, that is in my -- I meant that in terms of my response, our response to MDC's letter. Would you like me to address MDC's letter first?

THE COURT: Yes.

MR. CHABROWE: In terms of MDC's letter, Your Honor, I think that should be sealed because I believe that MDC had asked, based on some of their security protocols, that perhaps that should be sealed. It should be sealed for our purposes is for two main reasons. One is that, obviously the most main reason, is that it covers a lot of Mr. Cronin's medical conditions, a number of them, including being HIV positive. And we would want that to be, obviously, sealed.

And there's also a good amount of privileged conversations between myself and Mr. Cronin that are being mentioned that I feel should also be sealed in that regard.

THE COURT: In terms of the medical information, I believe that can be redacted. So the MDC so far has proposed redaction at the security information, which I think we can agree on. I believe the government has agreed to the redactions of medical information in the MDC's letter. So I believe we can redact the medical information in the MDC's letter.

Your third point was in terms of you think there's reference to your privileged communications with Mr. Cronin in the letter?

MR. CHABROWE: Correct.

THE COURT: Do you have an example of where that is?

MR. CHABROWE: I would say any reference in the MDC

letter of me speaking with Mr. Cronin would be privileged.

THE COURT: Why?

MR. CHABROWE: Because he's my client. Specifically we're talking about any -- because we're talking about his medical condition.

THE COURT: But if you disclose it to a third party, doesn't that break the privilege? Assuming that it is privileged, assuming you were giving legal advice or he was requesting legal advice, assuming that, once you disclosed it to MDC doesn't that break the privilege?

MR. CHABROWE: I mean, in those communications, Your Honor, I imagine that it would be -- that would be referring to his medical condition. I don't think there's any other communications that we're talking about.

THE COURT: My question is, why is it privileged? Assuming, if you did disclose it to the MDC person, why is that privileged? Doesn't that break the privilege?

MR. CHABROWE: I guess, sure, it's not an attorney client conversation. It's not privileged if I'm disclosing it to MDC. But if it's involving his medical condition, then it should be redacted.

THE COURT: Okay. I think we can agree on, or maybe we can't, I will propose that the MDC's request to redact the security information can be redacted. The redaction of medical information can also be redacted. Before I move on,

Mr. Moscow, did you have anything additional about the MDC letter?

MR. MOSCOW:  No, Your Honor.  I think the government has proposed redactions that would accomplish exactly what Your Honor has suggested.  Those were attached to the government's April 23rd letter addressing sealing.

THE COURT:  Okay.  So what I'm going to order is -- have you reviewed what the government proposed in terms of redacting medical information?

MR. CHABROWE:  I have not, Your Honor, but I'm sure I could do that and have an answer to the Court in terms of our position as to whether I agree by tomorrow.

THE COURT:  So what I'm going to do is the version of MDC's letter containing the security redactions will be docketed by the Court under seal later today.  And then the defense, the defendant, Mr. Chabrowe, will file his additional proposed redactions as to the medical information that you think needs to be redacted.

I'll order that you file those redactions, or that document, with those proposed redactions as to the medical care by May 15th.

MR. CHABROWE:  Okay.

THE COURT:  The only thing I want to ensure that your additions, if there are any, are on top of the government's.  So the government already proposed redactions,

I believe it was 28, ECF 28-1. Is that correct, Mr. Moscow?

MR. MOSCOW: I believe so, Your Honor.

THE COURT: So the government has already proposed redactions to your client's medical information. So to the extent that there's anything additional, you should add those there.

MR. CHABROWE: Okay.

THE COURT: Thank you. Mr. Moscow, I just wanted to ask you something about your findings in ECF 28. So I just want to confirm my understanding that you're seeking leave to file the proposed redacted version of the parties' joint response to MDC's letter under seal; is that correct?

MR. MOSCOW: Yes, Your Honor, pending the Court's approval of the redactions, at which point it could be filed publically.

THE COURT: Okay, correct. So that's 28-1. That's the parties' joint letter that you added redactions to. But ECF 28 is just the government's response to MDC's redaction proposal itself, like the cover letter. You're not saying that needs to be under seal?

MR. MOSCOW: No, Your Honor.

THE COURT: Mr. Chabrowe, I'm guessing at this time you don't have any objections to the government's proposed redactions to the parties' joint response letter?

MR. CHABROWE: No, I do not.

THE COURT: Okay, thank you. Now, last, sealing. Moving to Mr. Chabrowe, your request for leave to file your response to MDC's redactions proposal under seal. So that's 29-1, which you were talking about at first, is that document you're also saying should be under seal in its entirety?

MR. CHABROWE: Sorry, Your Honor. In terms of our -- the joint government response?

THE COURT: No. It's 29-1, and so on April 23rd and it's just a two line letter from you. It says, I request leave to file under seal the attached document. Thank you for your time and consideration, and then the attached document is just one paragraph explaining why you think the MDC's letter needs to be under seal.

Are you trying to file that document under seal, as well?

MR. CHABROWE: No.

THE COURT: So that is not under seal. So I will order that that not -- I think the way you filed it you're requesting for it to be filed under seal. So I will deny that request for that document to be filed under seal.

MR. CHABROWE: I understand.

THE COURT: Now, to the main event. Mr. Cronin, am I correct that you are requesting that Mr. Chabrowe be relieved as your current counsel?

THE DEFENDANT: Yes, I am.

THE COURT:  And you would like counsel to be appointed to you?  As you can see Mr. Farrell is here.  Would you like counsel to be appointed to you?

THE DEFENDANT:  I would like another counsel to be appointed to me, if you could, please.  Thank you.

THE COURT:  Let me ask you a couple more questions. Do you understand that although you have a right to counsel, you don't have the right to choose who will be appointed as your counsel?

THE DEFENDANT:  I understand.

THE COURT:  At this time, you would like me to appoint new counsel?

THE DEFENDANT:  If you could, please.  Thank you. Apologies for not turning up the first time.

THE COURT:  I understand.  Mr. Chabrowe, anything you would like to raise in terms of this request or any objections?

MR. CHABROWE:  No.  Thank you.

THE COURT:  Okay.  Based on Mr. Cronin's letter to me, it appears that there are issues between Mr. Chabrowe and Mr. Cronin that are likely to impact Mr. Chabrowe's representation of Mr. Cronin going forward.  So I will grant Mr. Cronin's request for a new counsel.

I will point CJA lawyer on duty today, who is Gary Farrell.  Mr. Farrell is already at the table.  Thank you for

being available, Mr. Farrell.

MR. FARRELL:  You're welcome, Your Honor.  I would like to be heard when you're done.

THE COURT:  All right, just a moment.  I want to confirm, though it's likely not necessary, I just want to confirm that Mr. Moscow and Mr. Chabrowe will cooperate with Mr. Farrell and getting him the necessary documents in this case.

MR. MOSCOW:  Of course, Your Honor.

MR. CHABROWE:  Yes, Your Honor.

THE COURT:  Thank you.  One other item before I turn to Mr. Farrell, two other items.  So, Mr. Chabrowe, before I relieve you, there's an issue pertaining to attorneys' fees raised by Mr. Cronin.

So, Mr. Cronin, I understand that you're seeking disgorgement of the legal fees you paid to Mr. Chabrowe.  Is that correct?

THE DEFENDANT:  That's correct.

THE COURT:  At this time, if you want to move forward with that request it must be filed as a motion on the docket.  So if you would like, I would direct your new counsel, Mr. Farrell, to assist you in getting that request on the docket appropriately, and then the Court would address it at that time.

THE DEFENDANT:  Okay.

THE COURT:  With that, Mr. Chabrowe, thank you for your service.  You're relieved at this time.

MR. CHABROWE:  Thank you, Your Honor.

THE COURT:  Thank you.  Before I move to Mr. Cronin's other pretrial motions, Mr. Farrell, did you have something other to raise besides the pretrial motions?

MR. FARRELL:  Yes, Judge.  This is a little unusual because I was appointed as Curcio counsel for Mr. Cronin, and I did meet him at the MDC.  I found him to be an easy gentleman to talk to, perfectly polite.  We spoke about what I was assigned to discuss, the potential conflict, which is now mooted by counsel's withdrawal from the case.

However, I'm not quite sure I should be the person appointed to represent Mr. Cronin going forward, or if that's who he wants.  The conversation, without disclosing it, it drifted to the substance of the case and maybe things that should be done by his lawyer.

And I don't know that we agree on those things that should be done, and I don't want to start off in a bad relationship.  Like I said, he's a gentleman.  I was under the impression he was going to hire somebody else also, and whether he qualifies for CJA is a question.

But I'll certainly abide by the Court's ruling and do my best to work with Mr. Cronin, who is a gentleman.  I just felt compelled to put that on the record.

THE COURT: Thank you. As I noted for Mr. Cronin, obviously he can get an attorney. He's not particularly entitled to the attorney of his choice. I have appointed you, as the duty CJA attorney. Obviously, working with your client takes time and I understand that you just met him, I would assume.

So, perhaps, it takes some time for you to talk to your client and to build a relationship and a rapport with him. If Mr. Cronin decides at some point he wants to represent himself, which he did mention in his letter that he did want to represent himself, if he wants to make that decision at a later time, that would be a different hearing for me to make sure that he understands what he's waiving and that he's waiving his right to counsel voluntarily.

At this time, I'm appointing Mr. Farrell. And if later Mr. Cronin wants to self represent, or represent himself, that would be a separate hearing.

THE DEFENDANT: I won't be representing myself. It will be through a lawyer.

THE COURT: It seems at this time, Mr. Farrell, Mr. Cronin is happy to have you represent him.

THE DEFENDANT: There is a small conflict of interest when we spoke. He was diverted to the case, which he shouldn't have been. So there's a little bit of a conflict of interest. If he's not happy, we can do another counsel,

lawyer, if that's okay with you.

THE COURT: I'm sorry. You're saying if he's not happy --

THE DEFENDANT: Yeah. I mean obviously I think we both agree on something. Correct?

MR. FARRELL: I think we agree to disagree with some things that should be done in the case.

THE DEFENDANT: I agree with you. So if I could chose new counsel, please.

THE COURT: No, you can't at this time. So obviously I don't want to get into what your attorney client conversations were, or what conflicts you were having in terms of strategy or something else. As I see it, you've met with your attorney I assume once. It's a brand new relationship. Perhaps you all can discuss some more, you all can talk some more, build a relationship, see if you all can get on the same page.

If at some point you don't like or you can't get on the same page with Mr. Farrell, or you want to make a motion for a new attorney or to self represent, that is a motion I would take under advisement. Obviously you do not -- you're not entitled to go through the entire CJA list until you find the attorney that you like. So you should take that into consideration when you're working with Mr. Farrell, or if you want to represent yourself or I understand you were talking

about disgorgement so you can get counsel, so that you can find another counsel.

THE DEFENDANT:  It's a new relationship.  I'll give it a try.

THE COURT:  Okay.  Lastly, in Mr. Cronin's letter he requested to be released on bail, as well as an order dismissing the indictment.  That's correct, Mr. Cronin?

THE DEFENDANT:  Yes.

THE COURT:  So as I already noted, I'll give you an opportunity to confer with your new counsel about these issues, after which your attorney can file a bail application if he thinks it's warranted, if he thinks it's appropriate, if he thinks he has argument that would entitle you to be released on bond.

As for an order dismissing the indictment, I will also give you an opportunity to discuss that with Mr. Farrell, your new counsel, and then an opportunity, after you discuss it with him, give you an opportunity to move to dismiss the indictment with the Court.  And I will set a briefing schedule for that motion if you and your attorney decide that you do want to file that motion.

Obviously, Mr. Farrell just got on the case.  So to give him sufficient time to familiarize himself with the case and to confer with his client and with the government, I will direct the parties to submit a status report within 30 days

from today's hearing.  So by June 9th submit a status report. In that report, the parties shall include a briefing schedule on any pretrial motions, if indeed defense counsel decides that there are motions necessary, the status of discovery, and any update on plea negotiations.

And in that report, as I already mentioned, Mr. Farrell, Mr. Cronin can indicate whether they move to indict, move to dismiss the indictment.  Given that, at this time I'm going to deny Mr. Cronin's request for bail and for an order dismissing the indictment for now.  But as I mentioned, his attorney can also always make a bail application and you can let me know in the 30 day status update if --

THE DEFENDANT:  No rush.  I'm good here.

THE COURT:  -- Mr. Farrell intends to move to dismiss the indictment.  Let's set a date for the next status conference.  Have you discussed a date already?

THE COURTROOM DEPUTY:  No, Judge, we did not.

THE COURT:  Let's set a date for the next status conference.  I didn't ask the government where they are with discovery, things of that nature, and perhaps it doesn't matter since we have new counsel here.

Were you envisioning producing additional discovery anytime immediately?

MR. MOSCOW:  Your Honor, plea negotiations are substantially far along.  We actually would view this as a

case that's exceedingly likely to resolve, not withstanding potential for a motion. That said, pending those negotiations, we're withholding some additional discovery such that it wouldn't be fair to say that discovery is complete at this time.

THE COURT: Okay. So you're anticipating continued plea negotiation discussions. So you're not disclosing any more discovery. Obviously, Mr. Farrell is new to the case. Do you have any -- when do you think would be appropriate to come back to see where the parties are?

MR. MOSCOW: Your Honor, we'll certainly have a better sense by the date of the status report. And it's possible that at that time -- I imagine at that time we would either be asking for a briefing schedule, as Your Honor indicated, or for a plea. It could be that we could set a status conference around the time of the status report.

So perhaps in lieu of a status report, we could come to court and either set a briefing schedule then or proceed with the change of plea hearing at that time.

THE COURT: Just a moment. While I'm looking at my calendar, Mr. Farrell, do you have anything, any thoughts about an appropriate date to come back for a status conference?

MR. FARRELL: I share the government's view, Your Honor. If we could get in the week of June 9th, Thursday,

the 12th or Friday, the 13th.

THE COURT:  We're definitely not coming on Friday, the 13th.

MR. FARRELL:  I understand and respect that, Judge. Any day that week, not the 11th, please.  The 9th, 10th, or 12th would be good, 16th or 17th.

THE COURT:  The week of the ninth is fine.

THE COURTROOM DEPUTY:  How about Wednesday, June 18th?

MR. FARRELL:  Yes.  I'm here at 1:00 for Judge Matsumoto, and that should be a short status conference. Anytime after that would be great.

MR. MOSCOW:  Anytime works for the government, Your Honor.

THE COURT:  Thank you.

THE COURTROOM DEPUTY:  Do you want to do 2:30?

MR. FARRELL:  That would be perfect for me.  Thank you.

THE COURT:  And the status report that you're sending me on June 9th, I have that you're going to tell me about the pretrial trial motions, status of discovery, any plea negotiations.  Also in that letter, if you could also tell me whether you're thinking that we need to do a change of plea or if negotiations are ongoing such that you are requesting an adjournment of the June 18th conference, please

let me know and please let me know the parties' position on exclusion of time, as well, in that letter if you do indicate that conference is not necessary at that time.

Any other matters before I ask about the Speedy Trial Act?

MR. MOSCOW:  Nothing from the government, Your Honor.

MR. FARRELL:  No.  Thank you, Judge.

THE COURT:  Does the government seek to exclude time under the Speedy Trial Act?

MR. MOSCOW:  Yes, Your Honor.  In view of new counsel's appearance in the case and the need to continue preexisting plea negotiations, we would ask that time be excluded between now and the date of at least the status report on June 9th to permit the parties to engage in plea negotiations and additional discovery.

THE COURT:  Anything from the defense?

MR. FARRELL:  I join in that, Judge.  It's reasonable.  I need the time to get up to speed.

THE COURT:  Any objection to excluding time through the conference of June 18th?

MR. MOSCOW:  None from the government.

MR. FARRELL:  None.

THE COURT:  I'll exclude time from today until June 18, 2025.  I find that the ends of justice served by

excluding such time outweigh the interest of the public and of the defendant in a speedy trial. This includes permitting newly appointed counsel to review any discovery he may have and confer with his client and the government, as well as continued plea negotiations.

Accordingly, the Court excludes the time from today to June 18th from the Speedy Trial Act pursuant to 3161(h)(7)(A).

Anything else from you, Mr. Moscow?

MR. MOSCOW: No. Thank you very much, Your Honor.

THE COURT: Anything from you, Mr. Farrell?

MR. CHABROWE: No. Thank you, Judge.

THE COURT: We're adjourned. Have a good afternoon.

(Proceedings concluded at 4:22 p.m.)

- - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/S/ Nicole Sesta, RMR, CRR*
*Court Reporter/Transcriber*

*May 28, 2025*
    *Date*